UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEEN HARVEY,

                Plaintiff,                          Case No. 14-cv-10614

v                                        Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff Kathleen Harvey challenges the Commissioner's decision denying her application for Social Security benefits. She claims that she is disabled as defined by the Social Security Act because she suffers from a spinal disorder and severe back pain.

On May 8, 2014, Harvey filed a motion for summary judgment, requesting that the ALJ's decision be reversed for a payment of benefits. The Commissioner, in turn, filed a motion for summary judgment, requesting that the ALJ's determination be affirmed. Because substantial evidence in the record supports the ALJ's determination that Harvey is not disabled, the Commissioner's decision will be affirmed.

**I**

Under the Social Security Act (SSA), a claimant is entitled to disability benefits if she can demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.05.  Harvey carries the burden of establishing that she meets this definition.  42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012).

In determining whether a claimant suffers from a disability, the ALJ conducts a standard five-step inquiry: (1) is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work?  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012).

Under this analysis, a claimant has the initial burden of demonstrating that she is unable to return to her past work because of her impairments.  Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A).

This Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted).  Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (citation omitted).

## II

At the time of the most recent administrative hearing, Harvey was 55 years old.  A.R. 31. She graduated from high school and obtained a certificate from Pontiac Business Institute.  A.R. 32.  She had previously worked as a housekeeper, a florist, and in customer service.  A.R. 32-33.

### A

On July 11, 2011, Harvey filed the instant claim asserting that she was unable to work due to her back pain.  She testified that she must continually change positions: that she can only walk for about ten to fifteen minutes at a time, that she can only stand for about fifteen minutes to a half hour, and that she can only sit for about ten minutes.  A.R. 34.  She can prepare microwavable meals, drive about four blocks at a time, do laundry, and "go out in my front yard for a little while." A.R. 37-38.  On bad days, however, she testified that "I go from bed to the living room floor with my ice pack."  A.R. 38.  She testified that sometimes she uses a walker at home; the walker was given to her by a friend.  A.R. 38.

### B

Harvey also provided two treatment reports to substantiate her claim of disability. On July 10, 2011, she visited the Garden City Hospital emergency room complaining of "pain in right buttocks that radiates down leg" and of "feeling numbness to lower part of leg."  A.R. 195. When she arrived, she explained that the pain rated a five out of ten; less than an hour later, she rated the pain as a three out of ten.  A.R. 195.  The medical notes indicate that she "[a]mbulated around cart without diff[iculty]."  A.R. 195.

The physician noted several abnormal findings, including "spine tenderness and limited straight leg raise" and "abnormal gait, decreased reflexes and loss of sensation."  A.R. 197.  She

was prescribed pain medication and referred for an MRI.  A.R. 195.  After the MRI was performed, Harvey stated that "she is feeling much better and wants to go home . . . ."  A.R. 197.

The MRI revealed abnormalities of Harvey's lumbrosacral spine.  There was "mild annular bulging of the disc" at the L2-3 level and a "moderate degree of focal narrowing of the central spinal canal" at L3-4, L4-5, and L5-S1 levels.  A.R. 199-200.

Harvey also testified that she has sought treatment from a physician named Dr. Pannu at least three times.[1]  A.R. 36.  According to Harvey, Dr. Pannu stated that physical therapy "would be an absolute waste . . . ."  A.R. 35.  Dr. Pannu offered to prescribe her Vicodin, but Harvey declined.  A.R. 36.  Dr. Pannu also discussed surgical options with Harvey.[2]  A.R. 37.

## C

On July 27, 2012, the Administrative Law Judge ("ALJ") denied Harvey's claim for benefits.  A.R. 20.  The ALJ first noted that Harvey had not engaged in substantial gainful

---

[1] Although Harvey testified that she sought treatment from Dr. Pannu, she could produce a record of only one visit:

> ALJ:     Are you trying to get other records [of the visits to Dr. Pannu]?
>
> Atty:    No, as far as we know the response is just there's no other record available from the last visit.
>
> ALJ:     Okay, all right.
>
> Harvey: Yes.
>
> Atty:    I could explore a medical source statement, but the treatment period because of no medical insurance has been a while.
>
> ALJ:     Okay.  I'm just looking for actual treatment records and ---
>
> Atty:    Right.
>
> ALJ:     ---and if she's seen him three times and what we've got is---
>
> Harvey: Everything was verbal.

A.R. 37; *see also* A.R. 206 (fax from Oakwood Brain and Spine Center stating "We have no records for this pt/DOB.").

[2] In her brief, Harvey claims that she has undergone two surgeries on her back.  Pl.'s Mot. Summ. J. 13.  However, a review of the record does not indicate any evidence to support this proposition aside from her conversation with Dr. Pannu.

- 4 -

activity since April 25, 2011, the alleged onset date.  A.R. 16.  Second, the ALJ determined that Harvey suffered from the following severe impairments:  foraminal-spinal stenosis of the lumbar spine[3] and lumbar radiculopathy.[4]   A.R. 16.   Third, the ALJ concluded that Harvey's back trouble met the severity of one of the Listed Impairments in 20 C.F.R. 404, Subpart P, Appendix 1.  A.R.  16-17.  Fourth, the ALJ determined that Harvey has the residual functional capacity to perform light work with the following limitations: "the claimant can stand and walk for six hours in an eight-hour work day; she can lift 20 pounds occasionally and 10 pounds frequently; she can occasionally squat, crouch, crawl, kneel, climb, balance, bend, and stoop; she must avoid concentrated exposure to extremes of temperature, humidity, and vibration; and she must avoid all hazards.  A.R. 17.  Fifth, the ALJ concluded that Harvey could not return to perform past relevant work.  A.R. 19.  Sixth, the ALJ concluded that Harvey had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, and therefore Harvey was not disabled as defined in the Social Security Act and denied benefits.  A.R. 19.

Harvey appealed the ALJ's denial of benefits to the Appeals Council.  The Appeals Council adopted the ALJ's reasoning regarding Steps One through Three, A.R. 5-6, and it also adopted the ALJ's residual functional capacity, A.R. 6.  However, the Appeals Council determined that Harvey could in fact perform her past relevant work as a florist, and therefore affirmed the denial of benefits.  A.R. 6.

---

[3] "Spinal Stenosis" is defined as the narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine cause by encroachment of bone upon the space.  *Dorland's Illustrated Medical Dictionary* (31st ed. 2007).
[4] "Lumbar radiculopathy" is defined as disease of the nerve roots of the lumbar and sacral segments of the spinal cord.  *Dorland's Illustrated Medical Dictionary*.

**III**

In her appeal of the ALJ's decision, Harvey asserts three grounds for relief. First, she claims that the ALJ's conclusion that she failed to meet the requirements of Listing 1.04 at Step Three is not supported by substantial evidence. Second, she claims that the ALJ's determination of her residual functional capacity at Step Four is not supported by substantial evidence. And third, she claims that she was denied procedural due process when the Appeals Council issued a decision on her claim without first holding a hearing.

**A**

Harvey first contends that the ALJ erred in failing to find that she met or equaled the requirements of Listing 1.04, which would have entitled her to a presumption of disability. 20 C.F.R. § 416.920(a)(4)(iii) ("If you have an impairment that meets or equals one of listings . . . we will find that you are disabled.").

The Listings describe specific impairments considered "severe enough to prevent an individual from doing gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. An impairment that meets a listing must satisfy all the medical criteria required for that listing. 20 C.F.R. § 404.1525(c)(3). An impairment cannot meet a listing based only on a diagnosis. 20 C.F.R. § 404.1525(d).

Harvey contends that she meets Listing 1.04 for disorders of the spine, which provides:

> 1.04. Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuranatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weaknesses) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

- 6 -

B.     Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

C.     Lumbar spine stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[5]

Although Listing 1.04 presents three alternatives by which a claimant may be found disabled, Harvey does not specify which alternative applies to her.

**i**

The ALJ determined that Harvey had not met Listing 1.04 at Step Three:

I have considered listing 1.04 (disorders of the spine) and concluded that the claimant's back impairment does not meet this listing.

A.R. 17.[6]   The ALJ does not elaborate on the medical evidence or the reasons for this conclusion at this point in the ALJ decision.[7]

Harvey asserts that the ALJ erred because "there is no analysis as to the medical evidence or whether Plaintiff would equal the listing."  Pl.'s Mot. Summ. J. 12.  To be sure, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet

---

[5] The inability to ambulate effectively is further defined as:

(1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive devices that limits the functioning of both upper extremeties."

1.00B2b.
[6] Likewise, the Appeals Council also summarily determined that Harvey did not meet Listing 1.04:

[t]he claimant does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

A.R. 6.
[7] The ALJ does, however, discuss the relevant medical evidence at Step Four when determining Harvey's residual functioning capacity.

or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so."  *Lewis v. Apfel*, 236 F.3d 503, 512 (6th Cir. 2001).

### ii

Although the ALJ did not explain his reasoning at Step Three, Harvey has not shown that she suffered prejudice as a result.  That is, Harvey must show that there is evidence in the record that she meets any of the subsections under Listing 1.04.

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").  To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify.  *Sullivan*, 493 U.S. at 530.  To satisfy this burden the claimant must offer medical findings equal to the severity to the requirements, and the findings must be supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 416.926(b).

Because Harvey does not identify which subcategory of Listing 1.04 she meets,[8] each will be examined in turn.  First, Listing 1.04(A) requires:

(1)      a disorder of the spine;

(2)      that results in the compromise of the nerve root or the spinal cord; and

---

[8] Indeed, Harvey does not explain how she meets each of the criteria for Listing 1.04.  Instead, she states that "Ms. Harvey's severe back impairments which has included two surgeries, that combined with MRI results should have been considered and *discussed in relation to the possibility of meeting a listing*, however a discussion of the evidence was nowhere to be found in the decision."  Pl.'s Mot. Summ. J. 13 (emphasis added).  Thus, it appears that Harvey seeks reversal because the ALJ did not explain her decision—not because Harvey actually meets Listing 1.04.  However, this Court may not remand or reverse unless Harvey can show that the ALJ's error harmed her; that is, that there is evidence in the record that Harvey meets Listing 1.04's criteria.  *See Shineski v. Sanders*, 556 U.S. 396, 410 (2009) ("the party seeking reversal normally must explain why the erroneous ruling caused harm").

(3)     evidence of nerve root compression characterized by

    (a)     neuro-anatomic distribution of pain,

    (b)     limitation of motion of the spine,

    (c)     motor loss accompanied by sensory or reflex loss, and

    (d)     positive straight leg test (if there is involvement of the lower back).

Here, Harvey does not point to evidence that she meets the requirements of Listing 1.04(A). From the medical records provided, Harvey cannot show that she meets each and every requirement. In particular, there is no evidence in the record indicating that Harvey had "limitation of motion of the spine" as required by 1.04(A)(3)(b). A July 10, 2011 physical exam revealed that she had "adequate range of motion and normal strength and tone." A.R. 197. In addition, the physician noted that Harvey "[a]mbulated around cart without diff[iculty]." A.R. 195. Nothing in the record indicates that Harvey had limited motion of the spine, and therefore 1.04(A)(3)(b) is not met.

Second, Listing 1.04(B) requires:

(1)     a disorder of the spine;

(2)     spinal arachonoiditis, confirmed by:

    (a)     an operative note or

    (b)     pathology report of tissue biopsy or

    (c)     appropriate medically acceptable imaging,

(3)     severe burning or painful dysesthesia

(4)     requiring the need for changes in position or posture more than once every 2 hours.

Here, nothing in the record indicates that Harvey has spinal arachnoiditis,[9] (B)(2), nor does Harvey argue or explain how she meets Listing 1.04(B).  No evidence in the record supports the conclusion that Harvey meets listing 1.04(B).

Third, Listing 1.04(C) requires:

(1)     a disorder of the spine;

(2)     that results in the compromise of the nerve root or the spinal cord;

(3)     lumbar spinal stenosis resulting in pseudoclaudication, which is:

(a)     established by medical imaging;

(b)     manifests as chronic nonradicular pain and weakness, and

(c)     results in an inability to ambulate effectively.

With respect to Listing 1.04(C), there is substantial evidence in the record to support the proposition that Harvey can ambulate effectively—meaning she cannot meet element (C)(3)(c). To "ambulate effectively":

> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . examples of ineffective ambulation include, but are not limited to, *the inability to walk without the use of a walke*r, two crutches or two canes . . . .

First, it is noteworthy that Harvey arrived at the administrative hearing without the use of any kind of walking aid.  And when asked if she used a walking aid, she stated that she used a walker[10] only at home:

ALJ:          Do you use any kind of ambulatory device, such as a cane or walker?

Harvey:      I do have a walker at home that I have to use on the bad days just to get from, you know, point A to the bathroom . . . .

---

[9] "Spinal Arachnoiditis" is defined as chronic adhesive arachnoiditis in the spinal arachnoid, with root and spinal cord symptoms similar to those caused by pressure from a tumor.  *Dorland's Illustrated Medical Dictionary*.
[10] Harvey received the walker from a friend; it was not prescribed to her.  A.R. 38.

- 10 -

A.R. 28.  And although Harvey testified that she "can't walk any distance," A.R. 34, she later explained:

> ALJ:        How far can you walk?
>
> Harvey:     Distance-wise, I'm unable to guess, maximum 10 to 15 minutes.

A.R. 34.

In addition to her testimony, Harvey's medical records also indicate that she was able to walk.  Even when Harvey sought emergency treatment for her pain, the nurse noted that Harvey "[a]mbulated around cart without diff[iculty]."  Thus, there is substantial evidence in the record to show that Harvey can ambulate effectively, which means she cannot satisfy all the elements of Listing 1.04(C).

Although the ALJ did not explain her reasoning for determining that Harvey did not meet Listing 1.04, Harvey cannot show she suffered prejudice from this lack of explanation.  Harvey does not present medical evidence that her impairment meets or exceeds the Listing in 1.04, as is her burden.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description of the listed impairment in order to be found disabled thereunder.").  A review of the administrative record reveals that there is substantial evidence supporting the ALJ's determination.  Accordingly, this matter will not be remanded on the basis that the ALJ did not sufficiently explain her reasoning at Step Three.

**B**

Harvey next claims that the ALJ's determination of her residual functional capacity at Step Four is not supported by substantial evidence.  She contends that the ALJ erred in two ways when determining her residual functional capacity: (1) the ALJ improperly discredited Harvey's

- 11 -

testimony, and (2) the ALJ failed to provide a narrative outlining Harvey's residual functioning capacity.

**i**

Harvey claims that the ALJ's credibility analysis is flawed and not based on a proper characterization of the record evidence: "The ALJ never rejects Plaintiff's severe complaints of pain but never does she evaluate it properly either." Pl.'s Mot. Summ. J. 11. In particular, Harvey contends that the ALJ's credibility determination regarding Harvey's symptoms does not comply with SSR 96-7p.

In general, credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *Gooch v. Sec'y of Health & Human Servs.*, 833 f.2d 589, 592 (6th Cir. 1987). In deciding whether substantial evidence supports the ALJ's decision "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 5252, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; see also 20 C.F.R. § 404.1529. "Consistency between the plaintiff's subjective complaints and the record evidence tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011).

SSR 96-7p outlines the specific factors an ALJ should take into account when evaluating a claimant's credibility:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other relevant evidence in the case record.

Here, the ALJ's finding that the objective record evidence does not support Harvey's claims of disabling limitations is supported by substantial evidence. The ALJ's credibility determination is thorough, detailed, and amply supported by the record. The ALJ properly looked at the objective medical opinion evidence, including the evaluations by consulting and reviewing physicians, Harvey's daily activities, her sparse treatment history, and her failure to follow treatment recommendations as undermining the severity of Harvey's symptoms. As the

Commissioner properly states, all of these considerations were proper under the relevant regulation. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical evidence), (c)(3)(l) (daily activities), (c)(3)(iv) (effectiveness of medication), (c)(3)(v) (treatment other than medication), and (c)(3)(vi) (other factors).

The ALJ acknowledged that Harvey's MRI "does document degenerative changes which could reasonably be expected to cause back and leg pain limiting the claimant's physical activities," but she also noted that "the treatment records do not support a finding that greater restrictions than those in the residual functional capacity finding are warranted." A.R. 18. She determined that Harvey's subjective complaints of pain were not credible based on the objective medical evidence in the record.

First, the ALJ determined that Harvey's subjective complaints of pain were not credible. Specifically, she noted that when Harvey sought treatment in the emergency room, Harvey initially "rated her pain a 5/10" which "can be characterized as moderate, not extreme." A.R. 18. Moreover, she reported feeling "much better" with medication. A.R. 18. In addition, at her second visit, Harvey "complained mostly of leg and calf pain, not so much of back pain. There is nothing in that treatment note indicating severe limitations stemming from the pain." A.R. 18.

This medical record contrasted with Harvey's testimony, in which she stated that she has "tried Vicodin, Prednisone. They take the edge off, but they don't touch it enough to where I can function." A.R. 36. Instead, Harvey now uses over-the-counter ibuprofen. A.R. 36.

Second, the ALJ determined that the diagnostic imaging did "not indicate particularly extreme findings" that would support Harvey's subjective complaints. A.R. 18.

Finally, the ALJ noted that Harvey is able "to perform a wide range of activities without significant incident," such as personal care, preparation of simple meals, light chores, and

driving. A.R. 18. Harvey also testified that she interacts with others socially on a weekly basis, follows instructions well, and handles stress well.

In her summary of Harvey's RFC, the ALJ stated that "I do not doubt that the claimant continues to struggle with ongoing back pain which radiates to her right leg; however, I am persuaded that she retains the capacity to perform light exertion with occasional postural maneuvering, no hazards, and no concentrated exposure to extremes of temperature, humidity, and vibration." A.R. 18.

Harvey disagrees with the ALJ's evaluation of this evidence, but it is in the province of the ALJ to make credibility determinations and plaintiff provides no compelling reason to disturb the ALJ's credibility determination. The ALJ credited the physicians' assessments in the emergency room, evaluated the extent to which the severity of Harvey's symptoms could reasonably be accepted as consistent with the medical evidence, and found Harvey's testimony about the extent of her limitations not fully credible. *See Walters*, 127 F.3d at 531 ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."). Here, there is substantial evidence in the record to support the ALJ's credibility findings and her conclusion that Harvey's impairments do not preclude her from performing the identified jobs.

**ii**

Harvey also claims that the ALJ failed to provide a narrative discussion of her RFC assessment in accordance with the requirements of Social Security Ruling (SSR) 96-8p, and thereby committed reversible error. However, much of Harvey's arguments on this issue are

conclusory allegations of error without citation or explanation of the specific error in the decision at issue:

> The ALJ only states conclusions and never gives any reasoning throughout her decision. The ALJ outright misstates and minimizes Plaintiff's impairments throughout the decision without explanation. The decision is so lacking in its detail and analysis that it is impossible to understand. The ALJ makes no attempt to allow the reader a fair and unbiased account of the medical evidence and analysis.

Pl.'s Mot. Summ. J. 11. Harvey does not identify the "misstatements" or "minimalizations' made by the ALJ, nor does Harvey explain which portions of the ALJ's opinion are "impossible to understand." Because Harvey does not identify the specific mistakes or misstatements, this Court has no obligation to try to locate material evidence or testimony to support Harvey's argument. *See Coffland v. Colvin*, 2014 WL 1571797, at *4 (D. Kan. Apr. 17, 2014) ("Plaintiff does not identify specific limitations which were allegedly ignored, and the court will not do counsel's job, and attempt to find some material evidence or testimony in particular which the ALJ ignored or did not relate to this RFC assessment.") (citing *Garrett v. Selby Connor Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

Harvey generally alleges that the ALJ did not comply with the narrative discussion requirement set forth in SSR 96-8p. The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2013). The ruling includes a narrative discussion requirement:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing

basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

In other words, SSR 96-8p's narrative discussion requires a discussion of how the ALJ reached her decision regarding the RFC assessment. But, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Instead, "[w]hat is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." *Castillo v. Astrue*, 2011 WL 13627, at *11 (D. Kan. Jan. 4, 2011).

As noted above, the ALJ evaluated the opinions of Harvey's examining physicians and considered all of Harvey's limited medical records. She resolved inconsistencies in the evidence as a whole, for example, by determining that not all of Harvey's testimony relating to her limitations had been credible. The ALJ's decision and formulation of Harvey's RFC thus meets the requirements of SSR 96-8p and are supported by substantial evidence.

**IV**

Harvey next contends that the Appeals Council violated her procedural due process rights in several ways. First, she contends that the Appeals Council "adopted blindly the step 1-3 findings of [the] ALJ . . . ." Second, she contends that the Appeals Council issued a decision without holding a hearing. Finally, she contends that the Appeals Council erroneously failed to include her attorney's response to the proposed findings of fact and law. Harvey cites no legal support for her contentions beyond the definition of "due process." *See* Pl.'s Mot. Summ. J. 14 ("Procedural due process is defined as the requirement that a person be afforded 'some kind of

hearing before the State deprives a person of liberty or property.'") (quoting *Zinerman v. Burch*, 494 U.S. 113, 127 (1990)); *id.* at 15 ("The right not to be subject to 'arbitrary or capricious action either by legislative or administrative action.") (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)).

The requirement of procedural due process imposes constraints on governmental actions that deprive individuals of protected liberty and property interests within the meaning of the Fifth and Fourteenth Amendments. *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Sixth Circuit has recognized that a Social Security claimant has a property interest in disability benefits. *Day v. Shalala*, 23 F.3d 1052, 1064 (6th Cir. 1994).

Because Harvey, as a claimant, has a sufficient property interest in disability benefits, the next step is to identify the procedures necessary to safeguard that interest. Procedural due process under the Fifth Amendment requires that disability claimants be provided a "full and fair hearing." *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996). However, the Supreme Court has emphasized "the importance of not imposing upon the States or the Federal Government . . . any procedural requirements beyond those demanded by rudimentary due process." *Day*, 23 F.3d at 1065 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).

The Sixth Circuit has held, that in order to be afforded procedural due process, a claimant must have the opportunity to present all of her evidence and to confront the evidence against her. *Flatford*, 93 F.3d at 1307. Even if there is an arguable defect in administrative proceedings, this defect does not, in and of itself, mandate reversal of an agency's action. *See Davis v. Chater*, 1996 WL 732298, at *3 (6th Cir. 1996) (concluding that a claimant is not entitled to remand unless he can show harm from the alleged defect); *Watters v. Comm'r Soc. Sec. Admin*, 530 F. App'x 419, 425 (6th Cir. 2013) ("Because a finding of disability required objective medical

- 18 -

evidence that Watters failed to provide, Watters cannot articulate how additional process would have aided him in presenting his case.").

Although Harvey provides three ways in which her procedural due process rights were violated, she cannot show that she suffered harm from these alleged violations. First, Harvey contends that the Appeals Council "adopted blindly" the ALJ's determination of Steps One through Three.[11] But as discussed above, there is no evidence in the record that Harvey met a Listed Impairment at Step Three. Even if the Appeals Council blindly adopted the Step Three conclusion, substantial evidence in the record supports the conclusion that Harvey does not meet a Step Three Listed Impairment.

Nor can Harvey show harm from the Appeals Council's failure to hold a hearing. Harvey has presented no regulations or caselaw that indicates an Appeals Council is obligated to hold a hearing before issuing a decision. *See* 20 C.F.R. § 416.1476 ("You may request to appear before the Appeals Council to present oral argument. The Appeals Council will grant your request if it decides that your case raises an important question of law or policy or that oral argument would help to reach a proper decision."). Nevertheless, Harvey maintains that the Appeals Council should have held a hearing so that a vocational expert could testify about the availability of jobs in Steps Four and Five.

It is unclear why Harvey wants an additional vocational expert to testify before the Appeals Council. Harvey never challenged the vocational expert's testimony before the ALJ: she does not allege that vocational expert's testimony in front of the ALJ was incorrect, or that it was based on insufficient information, or that it was based on an improper hypothetical. In other words, even if a vocational expert had testified before the Appeals Council, Harvey does not

---

[11] It is assumed that Harvey is not seeking a review of Steps One and Two, since the determinations at those steps were in her favor.

explain how this would change the outcome of the hearing.  Because Harvey does not argue the failure to request additional testimony from a vocational expert during a hearing resulted in harm, she has not shown that her procedural due process rights were violated.

Finally, Harvey has not alleged that she suffered harm from the Appeals Council's failure to include her attorney's response to the proposed findings in its opinion.  Again, Harvey cites no regulations or caselaw requiring the Appeals Council to note a claimant's attorney's response to the proposed findings.  And because, as discussed above, the ALJ's and Appeals Council's determinations were supported by substantial evidence in the record, Harvey has not suffered harm.[12]

## V

Because the ALJ reached her decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2006) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Accordingly, it is **ORDERED** that Plaintiff Kathleen Harvey's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

It is further **ORDERED** that Defendant Commissioner's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

---

[12] Harvey also asserts that the failure to include her attorney's response violated her substantive due process rights; however, she does not explain how this alleged failure amounted to an "arbitrary and capricious" action.  *See Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1993) ("The mere allegation of a substantive due process violation is not sufficient to raise a 'colorable' constitutional claim . . . .").

It is further **ORDERED** that Commissioner of Social Security's decision is

**AFFIRMED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 28, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on October 28, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---